KNIGHT v. DUNSMORE & CHAMBERS.

1. LIABILITY OF GUARANTOR OF PROMISSORY NOTE. Under the Code of 1851, § 953, a guarantor of a promissory note, who is not an original party thereto, is rendered liable upon his contract of guarantee by notice of non-payment within a reasonable time. A demand upon the maker of the note is not necessary to charge the guarantor.

2. REASONABLE TIME. What constitutes reasonable time must be determined by the circumstances of each case.

3. INSOLVENCY OF THE MAKER: NOTICE. The insolvency of the maker of a promissory note at the date of its maturity, is sufficient *prima facie* to charge the guarantor, under § 954, Code of 1851, without notice of non-payment.

4. SAME: EVIDENCE, Evidence showing that an insolvent maker of a

Knight v. Dunsmore & Chambers.

promissory note was in the habit of arranging to renew his notes at maturity, or otherwise protecting his indorsers, will *not necessarily* rebut the *prima facie* case made by showing the insolvency of the maker at the maturity of the note.

5. PARTIAL PAYMENT BY ONE INDORSER. Where several defendants in an action on a promissory note to which they were not originally parties, were liable as guarantors thereof, on several blank indorsements made thereon at different times, a payment of a sum less than the amount claimed, by one of the defendants, in consideration of being discharged from further liability, did not operate to discharge the other defendants.

*Appeal from Muscatine District Court.*

THURSDAY, JUNE 6.

DEFENDANTS are sued as the guarantors of a promissory note, made by one D. to the plaintiff. Judgment for the plaintiff, and defendants appeal.

*Richman & Bro.* for the appellant.

I. The character of the contract made by the defendants is fixed by §§ 953 and 954, of the Code of 1851. It is " deemed a guaranty of the performance of the contract." To charge the guarantors one of two things must be done by the holder: —

1. He must give them reasonable notice of non-payment by the principal, or

2. He must show affirmatively that they have received no deteriment from a want of notice.

II. Notice of non-payment can not be given before a demand or presentation for payment is made. Even a waiver of notice is not a waiver of presentation. See Laws of 1853, p. 188; *Berkshire Bank* v. *Jones*, 6 Mass. 524; *Backus* v. *Sheppard*, 11 Wend. 629 ; Edward's Bills & Prom. Notes 483 ; 7 Pet. 114.

III. The notice in this case was not reasonable. It should have been presented on the last day of grace, and notice

given either on that or the succeeding day. 1 Pars. Cont. p. 231–4;

IV. The insolvency of the maker at the maturity of the note, did not relieve the holder of the necessity to make a demand and give notice in order to charge the guarantors. The evidence shows that the note could have been secured at maturity.

V. The discharge or release of Jennings operated to discharge Dunsmore & Chambers. Chitty Cont. (Am. ed.) 605.

*Cloud & Van Horne* for the appellee, contended, 1. That the affirmative showing of no detriment to the guarantors was sufficient, citing *Bright* v. *Carpenter and Schner*, 9 Ohio 140; *Reynolds* v. *Douglas*, 12 Pet. 497; *Lewis* v. *Brewster*, 2 McLean 21; *Oxford Bank* v. *Haynes*, 8 Pick. 423; *Salsbury* v. *Hale*, 12 Ib. 415. 2. That the notice given was sufficient, citing Story Prom. Notes § 460; *Tallot* v. *Gery*, 18 Pick. 534; *Dale* v. *Young*, 24 Ib. 250.

WRIGHT, J.—Defendants were not parties to the note originally. It was negotiable and they indorsed the same in blank. By § 953 of the Code of 1851, such an indorsement is "deemed a guaranty of the performance of the contract." And then by the succeeding section it is provided, that to charge such guarantor, notice of non-payment by the principal, must be given within a reasonable time; but the guarantor is chargeable without notice, if the holder show affirmatively that the guarantor has received no detriment from the want of it. Plaintiff claims that he did give this reasonable notice, or if not that he has shown affirmatively that there was no detriment.

The note matured on the 4th of February, 1858. The maker died on the 8th and notice was given to the guarantors on the 9th. No change took place in the property of the maker between the maturity of the paper and the notice.

He was insolvent at his death, and was so on the day payment of the note should have been made. What is reasonable notice must always depend upon the circumstances of each case. Mr. Parsons says, that the question of reasonable time is one of law, and that while the authorities help but little in determining what time would be reasonable, he nevertheless deduces from them, these rules: While the guarantor is entitled to notice, he can not defend himself by the want of it, unless the notice has been so long delayed as to raise a presumption of waiver or of payment; or unless he can show that he has lost by the delay, opportunities for obtaining securities, which a notice, or an earlier notice would have given him. In this latter case, a very brief delay, of a day or two only, might be fatal to the claim of the guarantee, if it appeared that notice could easily have been given and would have saved the guarantor from loss. The question would be, in such a case, was there actual injury. (1 Par. on Cont. 514–15, citing 8 Pick. 423; 14 Ib. 353; 11 Metc. 563; 8 Cush, 154: 18 Pick. 534.) Following these rules, we think the court below was justified, under the circumstances disclosed, in holding that the notice was reasonable. No presumption of waiver or of payment certainly arose from the delay in this case; and the only possible question is, whether by the failure to give the notice they lost opportunities for obtaining securities. And this we will discuss when we come to consider another part of the case.

But appellants claim, that before they could be bound, they were not only entitled to notice, but that there should have been a *demand* on the principal and a failure on his part to perform his contract. The nature of this contract and the liability it creates is very far from being clearly or well settled by the books. Resulting perhaps from the different form in which the contract has been made, the obligation of the guarantor has sometimes been held absolute; sometimes conditional; then again he has been treated as

a surety; and still again as an indorser. In other cases, again, where the guaranty was absolute and unconditional for the payment of the note, it was held that neither demand nor notice was necessary to charge the guarantor. (*Reed* v. *Cutts*, 7 Greenl. 186; *Breed* v. *Hillhouse*, 7 Conn. 523.) It was as we suppose, in view of this want of agreement in the authorities, that a rule was given by the legislature in this State on this subject. And that rule, so far as applicable to the point now under discussion is, that notice of non-payment shall be given to the guarantor within a reasonable time, and when given, the guarantor is discharged. If it was intended that a demand on the principal was also necessary in order to bind the guarantor, it seems to us it would have been so declared. Not being so declared, we feel constrained to hold that it was the intention of the legislature to provide a plain and easily understood rule for the government of such cases. And this rule it seems to us is just and in no degree in conflict with what we understand to be the nature and character of the guarantor's undertaking. His blank indorsement, the Statute declares shall " be deemed a guaranty of the performance of the contract." He undertakes then, that the principal shall perform that which he has promised. If he does not, and he has notice within a reasonable time of his failure, he is liable. The object of the notice is that he may have an opportunity to protect himself by procuring securities and the like. Until he has the notice, it is true, he may rest secure. Having it, he is charged, without any further act on the part of the holder.

II. But the guarantor is chargable also if the holder show affirmatively that there was no detriment from the want of notice. (Code 1851, section 954.) This makes it incumbent on the holder to rebut any presumption of detriment from this want. One, and perhaps the most usual method of showing this, is by proof of the insolvency of the principal at the time of the maturity of the paper. A guaran-

tor insures as it were, the solvency of the principal, and therefore if the latter becomes bankrupt or notoriously insolvent, it is the same as if he was dead, and it is nugatory to attempt to collect or to go through with the form of notice of non-payment. (*Warrington* v. *Faber*, 8 East. 242.) And Mr. Justice Le Blanc in the same case says it is sufficient as against the guarantor, to show that the holder could not have obtained the money by making a demand on the note. And in another case it is said : "The guarantor is discharged, if notice is not given of non-payment to him, that he may avail himself of proper presentment, demand and of due notice of non-payment, when the drawer and indorser, or either of them, are solvent at the time the note became due. But when both are then insolvent, this would be *prima facie* evidence that a demand on them, and notice to the guarantor, would be of no avail, and therefore, the giving notice to a guarantor, not a party to the bill, would be dispensed with, the presumption being that the guarantor was not prejudiced by the want of notice." (*Cannon* v. *Gibbs*, 9 Serg. & R., 202. And see *Oxford Bank* v. *Haynes*, 8 Pick. 423 ; 2 Taunt. 206 ; *Reynolds* v. *Douglass*, 12 Pet. 497 ; 1 Barn. & Cress. 10).

That the principal in this case was insolvent at the time the note matured, is clearly shown. This is not denied, but it is claimed that the evidence shows that the principal, though involved, was in the habit of renewing his paper or making some arrangements when it matured so as to protect his indorser, and that he could and would have done so in this instance, if the proper demand had been made. When however, the plaintiff had established the principal's insolvency, he had made out a *prima facie* case. And this would not necessarily be rebutted by proof that he was in the habit of renewing his paper, nor by showing that through his friends or otherwise he might have succeeded in making some arrangements for payment or an extension of time. There is nothing in the evidence to satisfy us that the de-

fendants could at the maturity of the note, by any legal steps, have protected themselves. On the contrary we think the court below was fully justified in concluding that by reason of the principal's insolvency, the guarantors received no detriment from want of notice, even conceding that it was delayed for an unreasonable time.

III. Another point in this case is made upon the following facts : After the defendants had indorsed the note in blank, it was taken to one Jennings who indorsed it in the same manner. When defendants indorsed, or how long before Jennings did, is not shown. Nor does it appear who presented it to Jennings—it only appearing that defendant's names were on the note when Jennings placed his there. This action was brought against Dunsmore & Chambers and Jennings. After one continuance Jennings proposed to pay plaintiff one fourth of the amount due on the note, if he could be released. This proposition was accepted by plaintiff, and the money paid. Defendants (D. & C.) claim, under proper issues made by the pleadings, that the release of Jennings released them, and that they are no longer liable.

Whatever might have been the effect of the release of Jennings if he had jointly with the other parties indorsed the note in blank, his liability commencing at the same time, we do not think it operated to release them under the circumstances here disclosed. He stood not in the position of a joint guarantor with those primarily indorsing, but rather as the surety of such prior guarantors. Their liability, as to him, was fixed, complete and unconditional at the time his signature was obtained, and if he voluntarily paid any portion of the note, it was as between them, the payment of their debt, and did not release them from the payment of the balance.

Judgment affirmed.